# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

MICHELLE ANN KESTERSON,

    Claimant,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.

No. 18-CV-2048-LRR

**REPORT AND
RECOMMENDATION**

_____

  Michelle Ann Kesterson ("Claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34 of the Social Security Act. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons that follow, I recommend that the District Court **affirm** the Commissioner's decision.

## I.  BACKGROUND

  I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 13) and only summarize the pertinent facts here. This is an appeal from a denial of a request for disability insurance benefits ("DIB").

  Claimant was born on August 22, 1979. (AR[1] at 121.) Claimant is a high school graduate. (_Id._ at 90.) The ALJ found Claimant "has at least a high school education and

---

[1] AR citations refer to pages in the Administrative Record.

is able to communicate in English." (*Id.* at 22.) Claimant allegedly became disabled due to neck and shoulder injuries and depression on July 24, 2012 when she was 32-years-old. (*Id.* at 121.) She was 38-years-old at the time of the ALJ's original decision on October 12, 2017. (*Id.* at 8-29.) Claimant filed her claim on May 22, 2015. (*Id.* at 121.) Claimant was initially denied benefits on September 17, 2015. (*Id.* at 121-35.) Claimant filed for reconsideration on October 28, 2015, and was again denied on November 18, 2015. (*Id.* at 156-60.) Claimant filed a Request for Hearing on December 2, 2015. (*Id.* at 162.) A video hearing was held on June 15, 2017 with Claimant; her attorney, Corbett Ludeman; and a hearing reporter in Waterloo, Iowa and vocational expert Vanessa May and ALJ Julie K. Bruntz in West Des Moines, Iowa. (*Id.* at 84-120.) Claimant and the vocational expert both testified. (*Id.* at 89-120.)

The ALJ issued her decision denying Claimant benefits on October 12, 2017. (*Id.* at 11-29.) On November 27, 2017, Claimant filed a Request for the Appeals Council to review the ALJ's decision. (*Id.* at 221.) On May 18, 2018, the Appeals Council found there was no basis to review the ALJ's decision. (*Id.* at 1.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On July 23, 2018, Claimant timely filed a complaint in this Court. (Doc. 3.) On March 27, 2019, the Honorable Linda R. Reade, United States District Court Judge, referred the case to me for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if he or she is able to do work that exists in the national economy, but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic

work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to his or her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id*. Pts. 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in substantial numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.     *The ALJ'S Findings*

The ALJ made the following findings at each step with regard to Claimant's disability status:

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged disability onset date. (AR at 14.) Claimant did attempt to return to work several times since her alleged disability onset date, but those attempts proved unsuccessful. (*Id*.)

At step two, the ALJ found that Claimant suffered from the following severe impairments: methamphetamine abuse and cervical degenerative disc disease. (*Id*.) The ALJ also found that Claimant suffered from the following non-severe impairments: hand/foot impairments and depression. (*Id*.)

At step three, the ALJ found that none of Claimant's impairments met or equaled a presumptively disabling impairment listed in the regulations, specifically listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, Adult Mental Health Listings. (*Id*. at 14-15.)

At step four, the ALJ found that when considering all Claimant's impairments, including substance abuse,

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that the claimant can occasionally as [sic] lift/carry 20 pounds, 10 pounds frequently, and can stand and or walk for sit [sic] hours out of an eight hour work day, and sit for six hours out of an eight hour day. The claimant retains the ability to push and pull, including

operation of foot controls, frequently within these weights for hand controls, and with no limits on foot controls within these weights. She can frequently climb ramps and stairs, but never climb ladders, ropes, scaffolds. She can frequently balance and stoop, and occasionally kneel, crouch, and crawl. She can occasionally lift overhead with the left upper extremity and occasionally reach in front or laterally on the left. Due to substance abuse, she would be off task 20% of day and miss two or more days per month.

(*Id.* at 15-16.) Based on this RFC, the ALJ found at step four that Claimant could not perform her past relevant work, and found at step five that Claimant could not perform any other work that existed in significant numbers in the national economy. (*Id.* at 22-23.)

However, absent substance abuse, the ALJ found that Claimant had the following RFC:

[T]he claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that the claimant can occasionally as [sic] lift/carry 20 pounds, 10 pounds frequently, can stand and or walk for six hours in an eight hour day and sit for six hours each of an eight hour day. The claimant retains the ability to push and pull, including operation of foot controls, frequently within these weights for hand controls and has no limits on foot controls within these weights. She can frequently climb ramps and stairs, but never climb ladders, ropes, scaffolds. She can frequently balance and stoop, and occasionally kneel, crouch, and crawl. She can occasionally lift overhead with the left upper extremity and occasionally reach in front or laterally on the left.

(*Id.* at 24.) The ALJ concluded at step four that with this RFC, Claimant would be able to perform her past relevant work as a retail store manager. (*Id.* at 27-28.) The ALJ further found at step five that alternative work that Claimant could perform existed in significant numbers in the national economy as a photocopy machine operator, mail clerk,

or laundry sorter. (*Id*. at 29.) Therefore, the ALJ concluded that Claimant was not disabled. (*Id*.)

## B.    *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

## C.    *Duty to Develop the Record*

The administrative hearing is a non-adversarial proceeding, and the ALJ has a duty to "fully develop the record." *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). Because the ALJ

has no interest in denying Social Security benefits, the ALJ must act neutrally in developing the record. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citing *Richardson v. Perales*, 402 U.S. 389, 410 (1971)); *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994) (opining that "[t]he goals of the [ALJ] and the advocates should be the same: that deserving claimants who apply for benefits receive justice") (quoting *Sears v. Bowen*, 840 F.2d 394, 402 (7th Cir. 1988)) (bracketed information added).

## III. DISCUSSION

Claimant alleges that her case must be remanded because (1) the ALJ committed reversible error by failing to weigh Dr. Luke's opinion, which also led to the ALJ improperly weighing Dr. Neiman's opinion and then to the ALJ adopting an incorrect RFC, and (2) the ALJ was not properly appointed under *Lucia v. SEC,* 138 S. Ct. 2044 (2018). I will address each of Claimant's arguments in turn.

### A. *Claimant's Injury and Relevant Medical Evidence*

#### 1. *Claimant's injury*

Claimant worked at Aldi grocery stores beginning in 1997. (AR at 234-37, 258.) Claimant sustained what she describes as a "repetitive work injury" in 2011. (*Id.* at 92-94, 301.) At the time of her alleged onset of disability date, Claimant was the manager of an Aldi store and was required to unload stock and lift and carry heavy trays of merchandise, which she found increasingly difficult to do because of neck and shoulder problems. (*Id.* at 93.) Claimant eventually had three surgeries to repair the problems, but was dismissed from her position at Aldi because she still could not perform the essential duties of her job. (*Id.* at 94, 240.)

#### 2. *Dr. Chad Abernathy*

Dr. Chad Abernathy was Claimant's treating surgeon. (AR at 609-10.) In June 2014, he performed a C5-6 discectomy and fusion and removed C4-5 hardware from a previous procedure Claimant had undergone. (*Id.*) On July 30, 2014, Dr. Abernathy

wrote Claimant a prescription to "occupational medicine" for the therapists in that office "to determine work ability." (*Id.* at 627.) On the same date, he wrote another prescription stating that Claimant could "return to work based on occupational med[icine's] recommendations." (*Id.* at 626.) As will be discussed below, the parties do not agree as to whether Dr. Abernathy provided an opinion on Claimant's functional limitations.

### 3. *Physical Therapist Jill Kuyava*

On September 30, 2014, Ms. Jill Kuyava conducted Claimant's functional capacity evaluation ("FCE") for "occupational medicine." (*Id.* at 631-42.) Ms. Kuyava concluded that Claimant could perform work with the following limitations:

- Waist to floor lifting—45 lbs., occasionally
- Waist to crown lifting—25 lbs., occasionally
- Bilateral carrying—40 lbs., occasionally
- Left unilateral carrying—25 lbs., occasionally
- Forward reaching—Frequently
- Overhead reaching—Frequently
- Sustained work overhead—Occasionally

(*Id.* at 631.)

### 4. *Dr. Lloyd John Luke*

Dr. Lloyd John Luke is the Director of Occupational Health Services at Unity Point Health Occupational Health Services. He saw Claimant on September 11, 2014 "for the purpose of writing work restrictions for her." (*Id.* at 681.) In a September 12, 2014 letter addressed to Jenifer Vargo at Aldi Foods, Inc., Dr. Luke documented the following restrictions: "No lifting below knee or above shoulder level [and] [n]o gripping, twisting or lifting or with left arm outstretched." (*Id.*) Dr. Luke stated that these were temporary restrictions, that he had ordered an FCE that he expected to be "accomplished within the next two weeks," and that he would adjust his restrictions based

on the outcome of that FCE. (*Id.*) On October 7, 2014, Dr. Luke again evaluated Claimant, this time for the purpose of "writing permanent work restrictions." (*Id.* at 682.) In conjunction with this evaluation, Dr. Luke reviewed Ms. Kuyava's September 30, 2014 FCE and conclusions. (*Id.*) Based on his "review of the FCE, [Claimant's] copious medical history and [his own] examination of [Claimant] on October 7 and September 11, 2014," Dr. Luke assigned the following limitations to Claimant:

- No lifting below knee or above shoulder level
- No gripping, twisting or lifting with arms outstretched
- No lifting, pushing, pulling over 40 lbs.
- No sweeping, mopping, shoveling
- No work requiring repetitive bending at the neck or waist

(*Id.*)

### 5.    Dr. Richard Neiman

On April 7, 2015, Dr. Richard. F. Neiman conducted an examination of Claimant at the request of her attorney. (*Id.* at 689.) Dr. Neiman concluded that Claimant had the following physical restrictions:

- Cannot use the left arm above shoulder level
- Cannot lift above shoulder level
- No mopping, sweeping, or using a shovel
- No work with outstretched arms
- Lifting a maximum of 30 pounds four times an hour

(*Id.* at 692.)

### 6.    State Agency Reviewing Physicians Chrystalla Daly and John May

On August 17, 2015, Chrystalla Daly, D.O., reviewed the record for the state agency in conjunction with Claimant's original claim for DIB, and concluded that Claimant had the following limitations:

- lift and carry 20 pounds occasionally and 10 pounds frequently
- stand and/or walk for six hours in an eight-hour workday
- sit for six hours in an eight-hour workday

- push and pull within the above weight restrictions and perform frequent operation of hand controls and unlimited operation of foot controls
- frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds
- frequently balance and stoop
- occasionally kneel, crouch, and crawl
- occasionally lift overhead with her left upper extremity
- occasionally reach in front or laterally with her left upper extremity

(AR at 130-32.) To form her opinion, Dr. Daly reviewed many of Claimant's medical records, including Dr. Nieman's April 7, 2015 FCE and Ms. Kuyava's September 30, 2014 FCE. (*Id.* at 132.) Although Dr. Daly reviewed records from Allen Occupational Health, Dr. Daly did not mention reviewing an FCE from Dr. Luke. (*Id.* at 124-35.) In reviewing Ms. Kuyava's FCE, Dr. Daly stated that Ms. Kuyava "did not render restrictions." (*Id.* at 132.) It is at best unclear what part of Ms. Kuyava's FCE Dr. Daly reviewed. She also reviewed Dr. Neiman's FCE, and gave it only "some consideration," because Dr. Neiman was not Claimant's treating physician. (*Id.*) Dr. Daly mentioned Dr. Abernathy only to state that he had told Claimant that surgery would not alleviate all of her symptoms. (*Id.*) On November 18, 2017, Dr. John May again reviewed Claimant's record for the state agency in conjunction with Claimant's appeal of her denial of DIB and affirmed Dr. Daly's initial RFC because Claimant had not provided new evidence since the initial review, except to state that she could now lift 40 pounds. (*Id.* at 148.)

### 7. *Dr. Gregory Harter*

Dr. Gregory Harter appears to be Claimant's most recent primary care physician. He started treating Claimant in July 2016. (*Id.* at 723-24.) Claimant usually sees Dr. Harter for treatment of her migraines, but on two occasions, Dr. Harter did more comprehensive exams. During a follow-up exam on November 3, 2016, Claimant stated that she had no "pain that bother[ed her] in daily life." (*Id.* at 732.) At the same exam, Dr. Harter noted that Claimant had "no weakness or difficulty moving the arms or legs"

and "no numbness, tingling of the arms or legs." (*Id.*)  On December 12, 2016, Claimant returned to Dr. Harter for a comprehensive physical examination and reported "no problems" and that "she [was] doing well" at that time.  (*Id.* at 733.)  Again, Claimant reported no pain that bothered her in daily life, and Dr. Harter's exam revealed "no weakness or difficulty moving the arms or legs" and "no numbness, tingling of the arms or legs."  (*Id.* at 734.)

### B.     The Parties' Arguments

Claimant argues that the ALJ made the following mistakes weighing the medical evidence in the record: (1) the ALJ assumed Dr. Abernathy had provided an opinion about Claimant's functional limitations when he actually had not done so, (2) the ALJ erred by not addressing Dr. Luke's functional limitations in her decision, and (3) these two errors led to "the faulty weighing of the opinion of Dr. Richard Neiman."  (Doc. 16 at 5.)  Claimant also asserts that her case must be remanded because the ALJ who decided the case was improperly appointed under *Lucia*.  The Commissioner counters that the ALJ properly weighed all medical opinion evidence in the record, even though she did not specifically address Dr. Luke's opinion.   In addition, the Commissioner argues that because the evidence on the record as a whole does not support Dr. Luke's opinion, the ALJ's failure to address the opinion was harmless error.

### C.     Dr. Abernathy did not provide an opinion regarding Claimant's functional limitations.

Claimant argues that Dr. Abernathy actually deferred his opinion to Dr. Luke. Claimant asserts that Dr. Luke was the "occupational medicine" physician Dr. Abernathy was referring to his July 30, 2014 prescription.  (Doc. 18 at 2.)  Claimant supports her claim by citing the September 12, 2014 letter from Dr. Luke to Jennifer Vargo at Aldi, Claimant's former employer, giving Ms. Vargo Claimant's temporary work restrictions and stating that he had requested a functional capacity evaluation (FCE) that "will be

accomplished within the next two weeks." (AR at 681.) The letterhead on Dr. Luke's stationary says "Unity Point Health Allen Hospital Occupational Health Services" and Dr. Luke's signature block identifies him as "Medical Director, Unity Point Health Allen Occupational Health Services." (*Id.*)

Ms. Kuyava conducted Claimant's FCE on September 30, 2014, approximately two weeks after Dr. Luke's letter to Ms. Vargo. (*Id.* at 631.) Ms. Kuyava's FCE report is addressed to "Dr. Jack Luke, MD, Allen Occupational Health Services" and states that Claimant was referred to E3 Work Therapy Services, Ms. Kuyava's employer, for an upper extremity functional capacity evaluation. (*Id.*) The FCE report closes with, "[o]nce again, thank you for referring Michelle Kesterson for evaluation." (*Id.* at 641.) In his own final opinion listing Claimant's functional limitations, and included in another letter to Ms. Vargo, Dr. Luke notes that he considered Ms. Kuyava's FCE when he made his determination. (*Id.* at 682.)

Claimant asserts that Ms. Kuyava's opinion was actually written to help Dr. Luke formulate his own opinion regarding Claimant's limitations and that Dr. Luke's opinion is the final opinion from "occupational medicine." The Commissioner counters that Ms. Kuyava's FCE limitations have nothing to do with Dr. Luke and that because Ms. Kuyava's FCE evaluation was done at Dr. Abernathy's request, Dr. Abernathy tacitly adopted Ms. Kuyava's opinion as his own.

I find that Claimant has met her burden to prove that Ms. Kuyava's functional capacity evaluation was performed at Dr. Luke's request. The letter written by Ms. Kuyava and addressed to Dr. Luke thanking him for the referral indicates that Dr. Luke was involved in the process that resulted in Claimant arriving at E3 Work Therapy Services. Though the chain of referrals and medical providers is somewhat opaque, Claimant's version fits with the evidence in the record and helps to account for the delay between Dr. Abernathy's July 30 prescription and Ms. Kuyava's September 30

evaluation.  In the two months between those two appointments, Claimant had to see Dr. Luke and wait to get an appointment with Ms. Kuyava for her FCE.  After that, Ms. Kuyava reported her findings and conclusions to Dr. Luke, who, some might assume, would use them to write his own limitations for Claimant.  In the end, of course, Dr. Luke he did not adopt Ms. Kuyava's limitations. (*Compare* AR 631 and 682.)  This finding, however, does not mean that Dr. Abernathy did not initiate the entire process by writing his prescription.[2]

The question then becomes, "Did Dr. Abernathy tacitly adopt the functional limitations of 'occupational medicine' professionals.  And, if so, which professional's opinion did he adopt—Ms. Kuyava's opinion or Dr. Luke's opinion?"

When a group of physicians and other health-care professionals work together as a team, the involvement of a physician or other medical source gives the entire treatment team, even non-physician healthcare providers, treating-source status.  *See Shontos v. Barnhart*, 328 F.3d 418, 426-27 (8th Cir. 2003) (reversing decision of ALJ and remanding case for an award of benefits because reports of nurse practitioner and certified therapist should have been afforded greater weight when they were part of treatment team that had a "longitudinal perspective" of claimant); *see also Borden v. Comm'r of Soc. Sec. Admin.*, 2014 WL 7335176, at *15, n.2 (N.D. Ohio Dec. 19, 2014) (affirming ALJ's decision to give little weight to report of nurse practitioner, even though report was signed by psychiatrist because "a 'team' opinion signed by physician and nurse practitioner does not qualify as a treating source opinion when there is no evidence demonstrating that the statement presented to the ALJ represented the opinions of a team effort, or that the medical facility used a team approach to a claimant's mental health

---

[2] The involvement of Aldi does not weigh into my decision because Claimant was working with her worker's compensation insurance at this time and I assume Aldi had to authorize payment for the FCE and would want to be notified of the results.

treatment") (citation omitted). In some jurisdictions, a "team" approach is not necessary for an opinion to be ratified as the opinion of a "medical source" if it is obvious that a non-treating source is working under the supervision of a treating physician or other medical source. *See Meyer v. Schweiker*, 549 F. Supp. 1242, 1248 (W.D.N.Y. 1982) (doctor's statement regarding claimant's functional limits treated as if statement was from the treating physician when the statement was made at the direct request of the treating physician); *see also Conte v. McMahon*, 472 F. Supp. 39, 47-48 (D. Mass. 2007) (accepting physician's hand-written endorsement of physical therapist's opinion as ratification and adoption, even though physical therapist's evaluation ordered by attorney). *But see Nichols v. Comm'r of Soc. Sec. Admin.*, 260 F. Supp. 2d 1057, 1065 (D. Kan. 2003) (although a supervising physician signed report of a nurse practitioner, the court declined to consider them a team because there was no evidence the nurse practitioner was working closely under the physician's supervision or had consulted with the physician, and the record did not indicate the physician had ever treated the claimant, but only had signed the report); *Colson v. Barnhart,* No. 02-108-B, 2003 WL 1092745, at *3 (D. Me. Mar. 13, 2003) (recommending that the court affirm the weight the ALJ gave to nurse practitioner's report because there was no indication she was working other than on her own in the treatment of the claimant), *R. & R. adopted*, 2003 WL 1956243 (D. Me. Apr. 24, 2003).

*Castro v. Barnhart* is the most recent Eighth Circuit decision on this issue. In *Castro*, the claimant returned to his surgeon two years after his surgery to have the surgeon ratify a physical therapist's functional limitations. 119 F. App'x 840, 843 (8th Cir. 2005). The surgeon summarized the physical therapist's conclusions and noted that the claimant's cooperation during the physical therapist's evaluation indicated that the therapist's conclusions were valid. *Id.* at 843. The court held that the therapist's opinion was not entitled to controlling weight as a treating physician opinion because the physician

had not seen the claimant for two years, did not conduct his own independent examination, and did not have an ongoing relationship with the claimant. *Id.*

The case at bar does not fit squarely within the fact patterns of any of the precedent cases discussed above. On the one hand, Ms. Kuyava certainly conducted her FCE "at the direct request" of Dr. Abernathy because he sent Claimant to occupational medicine. *See Meyer*, 549 F. Supp. at 1248. On the other hand, it is clear that Dr. Abernathy and Ms. Kuyava do not work together as a team since they do not even work for the same organization. *See Shontos*, 328 F.3d at 426-27. In addition, unlike the physician in *Castro*, Dr. Abernathy did not even attempt to ratify Ms. Kuyava's conclusions after her examination of Claimant because there is no documentation in the record that Dr. Abernathy ever saw Ms. Kuyava's FCE report and limitations. 119 F. App'x at 843. However, also unlike the physician in *Castro*, who had not seen his patient in two years, Dr. Abernathy had just seen Claimant and referred her to occupational medicine for the FCE to determine her work readiness. (AR at 627.) Moreover, Ms. Kuyava and Dr. Luke arguably worked in a team setting, even if Dr. Luke did not ratify Ms. Kuyava's FCE.

I find that the ALJ erred by concluding that Dr. Abernathy tacitly adopted Ms. Kuyava's limitations as his own. There is nothing in the record that supports a theory that Dr. Abernathy would adopt this recommendation. Ms. Kuyava did not dictate a letter to Dr. Abernathy. Dr. Abernathy does not even have a copy of Ms. Kuyava's FCE in his records. Rather, it seems that Dr. Abernathy outsourced this task to occupational medicine entirely and did not want to be involved in the decision to determine when and under what circumstances Claimant returned to work. Dr. Abernathy's final word is "Return to work based on occupational med[icine] recommendations." (*Id.* at 626.) Dr. Abernathy does not instruct Claimant to report back to him and does not instruct Dr. Luke to report to him. Likewise, because Dr. Abernathy and Dr. Luke did not work

together and because the evidence supports a finding that Dr. Abernathy outsourced the task of determining when and under what circumstances Claimant would return to work, I find that Dr. Abernathy also did not adopt any FCE.

Therefore, I find that the ALJ erred by concluding that Dr. Abernathy provided an opinion about Claimant's functional limitations. Substantial evidence in the record as a whole does not support the conclusion that Dr. Abernathy adopted Ms. Kuyava's FCE.[3]

The Court must decide the proper remedy for this error. The Court could remand to reweigh the evidence and give the ALJ the opportunity to consider Dr. Abernathy's treatment notes merely as the notes of a treating physician, but not as a formal opinion. After a review of the record, I find that remand is not necessary. Dr. Abernathy's physician notes comprised only five pages of the record. (*Id.* at 582-83, 609, 626-27.) Two of the pages are the much-discussed prescriptions, two pages document Dr. Abernathy's initial pre-operative visit with Claimant wherein they discuss the pros and cons of having surgery. (*Id.* at 582-83.) One page contains Dr. Abernathy's surgical notes from Claimant's surgery. (*Id.* at 609.) None of these notes tells the reader anything about Claimant's post-surgical functionality or limitations. Therefore, I find that remand on this issue would be futile and would not help the ALJ conduct a meaningful evaluation of the record and Claimant's claims. In addition, an ALJ is only required to evaluate all medical opinions she receives. *See* 20 C.F.R. §§ 404.1527(c), 416.927c. As discussed above, Dr. Abernathy did not write an opinion in this case. Accordingly, I find that the case need not be remanded on this issue.

---

[3] This finding does not mean that Ms. Kuyava's opinion should not be considered. As the ALJ noted, the opinion is well-supported by testing during the FCE. (*Id.* at 17.) The opinion may be considered as evidence of how Claimant's physical impairments limit her abilities, but not as evidence of Claimant's disability. *See Cronkhite v. Sullivan*, 935 F.2d 133, 134 (8th Cir. 1991) (per curiam) (citing 20 C.F.R. § 404.1513).

## D.  *The case need not be remanded to weigh Dr. Luke's opinion.*

Claimant argues that the ALJ failed to properly weigh Dr. Luke's opinion in her decision and the case should be remanded for the ALJ to properly weigh Dr. Luke's opinion along with other medical evidence in the record.  The Commissioner concedes that the ALJ should have evaluated Dr. Luke's opinion, but argues that an ALJ is not required to evaluate every piece of evidence in the record.  The Commissioner also asserts that by stating that she considered the entire record, the ALJ encompassed Dr. Luke's opinion in her evaluation and, therefore, she did consider the opinion.  The Commissioner further asserts that because the record as a whole does not support Dr. Luke's opinion, failure to mention the opinion was harmless error and is not a reason to remand the case.[4]

### 1.  *The Commissioner's assertion that the ALJ reviewed "the entire record" is unavailing.*

The Commissioner relies on the ALJ's citations to "the entire record," to support the conclusion that the ALJ considered Dr. Luke's opinion.  I find that argument ineffective because the Commissioner cites solely to boilerplate or conclusory language.

---

[4] Claimant argues that the Commissioner's attempt to weigh Dr. Luke's opinion in her resistance in this case is an impermissible *Chenery* violation. In *Securities & Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947), the Court held that when reviewing a commissioner's decision, the court "must judge the propriety of such action solely by the grounds invoked by the agency" and may not affirm the decision based on a post hoc rationale that "it considers to be a more adequate or proper basis." *See also Banks v. Massanari*, 258 F.3d 820, 824 (8th Cir. 2001) ("'[A] reviewing court may not uphold an agency decision based on reasons not articulated by the agency,' when 'the agency [has] fail[ed] to make a necessary determination of fact or policy' upon which the court's alternative basis is premised.'") (quoting *Healtheast Bethesda Lutheran Hosp. and Rehab. Ctr. v. Shalala,* 164 F.3d 415, 418 (8th Cir. 1998)) (alterations in original).  I find that the Commissioner is not reweighing the evidence in the record.  Rather, she is merely making the argument that even if the case was remanded for the ALJ to reweigh the evidence, the outcome would likely be same, and therefore, any error in the weight assigned to the evidence was harmless error.

Such general and conclusory language does not show that the ALJ in this case did, in fact, consider Dr. Luke's opinion. Contrary to some of the medical evidence in the record (i.e., AR at 538-78), Dr. Luke's opinion is not clearly irrelevant to the issues in this case.

2.   *Although not every piece of evidence must be discussed by the ALJ, that does not end the inquiry.*

The Commissioner is correct in her assertion that an ALJ need not discuss every piece of evidence in the record. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). However, the cases cited by the Commissioner to support her argument on this point can be distinguished from the case at bar. The cited cases actually mention the documents claimants argued were not discussed in the decisions. *See id.* ("Given the ALJ's specific references to findings set forth in Dr. Michaelson's notes, we find it highly unlikely that the ALJ did not consider and reject Dr. Michaelson's statement that Wildman was markedly limited.") (internal quotation marks omitted); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Given the ALJ's specific references to the medical findings set forth in Dr. Guntharp's letter, it is highly unlikely that the ALJ did not consider and reject Dr. Guntharp's opinion that Black was disabled as a result of her extreme scoliosis.") In the instant case, the ALJ never mentioned Dr. Luke. Therefore, a more thorough analysis is required.

3.   *Failure to discuss Dr. Luke's opinion was harmless error.*

The ALJ did not mention Dr. Luke or his opinion. Claimant argues that this omission resulted in the ALJ crafting an RFC that did not include all her limitations. Specifically, Claimant argues that the ALJ should have adopted the following limitations from Dr. Luke's opinion: (1) No lifting below knee or above shoulder level, (2) No gripping, twisting, or lifting with arms outstretched, and (3) No sweeping, mopping, shoveling.

Dr. Luke, Ms. Kuyava, and Dr. Nieman were the only people who examined Claimant and rendered opinions on her functional limitations. The state agency physicians also rendered opinions, which the ALJ did not explicitly weigh, but which the ALJ actually adopted as her RFC, thereby giving them the most weight of all offered opinions. (*Compare* AR at 24 and 130-32.) After a thorough review of the record, and as discussed below, I find that the error was harmless because the record on the whole supports the ALJ's decision. A harmless error occurs when there is no indication that the ALJ would have reached a different decision without the alleged error. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (citing *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008)) (holding there was no indication the ALJ would have decided differently had he not committed the error and therefore the error was harmless).

### a. Dr. Luke's own treatment notes do not support his opinion.

Dr. Luke's opinion has deficiencies that render it unworthy of much consideration. As discussed above, and as argued by Claimant, Dr. Luke ordered Ms. Kuyava's FCE of Claimant. (AR at 681.) Ostensibly, this was so Dr. Luke could obtain a more complete picture of Claimant's limitations, as demonstrated by the letter Dr. Luke wrote to Ms. Vargo at Aldi stating, "I will adjust [Claimant's] temporary restrictions as appropriate *based upon [the] FCE result*." (*Id.*) (emphasis added.) However, Dr. Luke's permanent restrictions are very different from the restrictions in Ms. Kuyava's FCE. (*Id.* at 682.) A side-by-side comparison of relevant restrictions is telling:

| Ms. Kuyava's Restrictions | Dr. Luke's Restrictions |
|---|---|
| Waist to floor lifting–45 lbs., occasionally | No lifting below knee or above shoulder level |
| Waist to crown lifting—25 lbs., occasionally | |
| Forward reaching--frequently | No gripping, twisting, or lifting with arms outstretched |
| Overhead reaching--frequently | |
| Sustained overhead work--occasionally | |
| | No sweeping, mopping, shoveling |

(*Id.* at 631, 682.) Dr. Luke wrote his opinion on October 7, 2014 after examining Claimant. (*Id.* at 682.) On that day, Claimant indicated that her pain was a 3 out of 10, which ranked it between "mild" and "moderate" on Dr. Luke's pain rating scale. (*Id.* at 685.) Dr. Luke's examination notes from that day document that although Claimant's flexion and extension at her waist was slow, Claimant had normal range of motion in her upper extremities. (*Id.* at 687.) Dr. Luke also noted that although Claimant "claim[ed] lightning like pains in [her left] shoulder and [left] hip, [the pain was] not reproduced today." (*Id.*) The results of Claimant's Spurling test, a test for cervical radiculopathy,[5] were negative and Claimant only used Biofreeze for pain relief. (*Id.* at 684, 687.)

In summary, Dr. Luke's October 7, 2014 examination documents (1) a normal range of motion in Claimant's upper extremities, (2) a pain rating of 3 out of 10, (3) an inability to reproduce pain during clinical tests, (3) a lack of strong medication to help with pain,[6] and (4) no radiculopathy. More importantly, Ms. Kuyava's opinion, which is supported by ten pages of objective clinical test results and which was written for Dr. Luke, supports different limitations.

Dr. Luke's opinion letter to Ms. Vargo contains no support for his limitations other than to list his own evaluation of Claimant, Claimant's "copious medical history," and Ms. Kuyava's FCE. (*Id.* at 682.) Dr. Luke does not cite any objective tests that he, himself, conducted, or cite any tests that Ms. Kuyava conducted that led him to conclusions that differ from those of Ms. Kuyava. (*Id.*) A conclusory medical opinion

---

[5] *Dorland's Illustrated Medical Dictionary* 1900 (32d ed. 2012). Cervical radiculopathy is a "disease of the [cervical] nerve roots, such as from inflammation or impingement. . . . often with neck or shoulder pain." *Id.* at 1571.

[6] Normally, a lack of use of strong medication would weigh against Claimant. *See Richmond v. Shalala*, 23 F.3d 1441, 1443-44 (8th Cir. 1994). However, in this case, Claimant is not allowed to have prescription medications because of her prior attempted suicide-by-overdose. (AR at 95.) Therefore, the lack of prescription medications should not be weighed against Claimant.

regarding a claimant's limitations that fails to cite support is properly rejected, especially, when, as will be discussed below, the opinion is not supported by the record as a whole. *See Strongson*, 361 F.3d 1066, 1071 (8th Cir. 2004) (citation omitted) (affirming the ALJ's decision to give little weight to physician's opinion when the opinion was "without explanation or support from clinical findings" and "not internally consistent" with physician's own treatment notes). In addition, "[a] . . . physician's own inconsistency may . . . undermine his opinion and diminish or eliminate the weight given his opinions." *Hacker*, 459 F.3d at 937. Accordingly, because Dr. Luke's opinion is not supported by his own treatment notes, his opinion would not have been entitled to much weight, had the ALJ discussed it in her decision. *See* 20 C.F.R. Section 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion."). I find that based on the lack of support in Dr. Luke's treatment notes, the ALJ's failure to discuss Dr. Luke's opinion was harmless error.

### b.     The record on the whole does not support Dr. Luke's opinion.

20 C.F.R. Section 404.1527(c)(4) provides that "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." The only opinion in the record that I can find, and the only opinion cited by Claimant, that is consistent with Dr. Luke's opinion is the opinion of Dr. Neiman, who performed an FCE on Claimant at the request of her attorney on April 7, 2015, six months after Dr. Luke completed his FCE. (AR at 689.) In pertinent part, Dr. Neiman concluded that Claimant cannot use her left arm above shoulder level; cannot lift above shoulder level; cannot mop, sweep, or use a shovel; and cannot work with

outstretched arms. (*Id.* at 692.) Dr. Neiman opined that while Claimant can work, she likely cannot return to her previous position at Aldi.[7] (*Id.*)

On the other hand, the rest of the record as a whole supports less-restrictive limitations. A physical therapist is not an "acceptable medical source" whose opinion is entitled to substantial weight. 20 C.F.R. §§ 404.1513, 416.913. A therapist's assessment is "other medical evidence." 20 C.F.R. § 404.1513(a)(3). Although Ms. Kuyava is not a "medical source" under SSA regulations, her treatment notes may be used to establish how Claimant's impairments affect her ability to function. *See Cronkhite v. Sullivan*, 935 F.2d 133, 134 (8th Cir. 1991) (citing 20 C.F.R. § 404.1513). Ms. Kuyava's very detailed and supported treatment notes had less-restrictive lifting and reaching limitations and did not address sweeping, mopping, and shoveling. (AR at 631-41.) Likewise, the most recent treatment notes in the record from November and December 2016 document that Claimant had no "pain that bother[ed her] in daily life," "weakness or difficulty moving the arms or legs," or "numbness, tingling of the arms or legs." (*Id.* at 732, 734.) Claimant reported to her primary care physician that she was experiencing "no problems" and that "she [was] doing well." (*Id.* at 733.) Furthermore, as mentioned above, the most recent pain assessment in the record, dated October 7, 2014, rates Claimant's pain as a 3 out of 10. (*Id.* at 685.) During her FCE with Ms. Kuyava, Claimant exhibited no overt pain behaviors and, based on the pain questionnaires Ms. Kuyava administered as part of the FCE, Claimant's subjective pain reports and behaviors rated "low." (*Id.* at 633.) Although Claimant told Ms. Kuyava that she could work above her head with her right arm five-to-ten minutes, and with her left arm less than five minutes, Ms. Kuyava's tolerance testing demonstrated that Claimant was able to

---

[7] The issue of whether a claimant can work is "reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (quoting *Stormo*, 377 F.3d at 806). Therefore, this part of Dr. Neiman's opinion must be ignored and should be given no weight.

complete 50 reps of overhead reaching before being limited by left shoulder fatigue and pain. (*Id.* at 636-37.) Claimant could also complete 50 reps of forward reaching before being limited by shoulder fatigue and pain. (*Id.*)

At her physical in May 2014, before she underwent the surgery that has been beneficial to her, Claimant told her physician that she was able to carry out all her activities of daily living, even though she could not do things like gardening. (*Id.* at 584.) At the hearing, Claimant stated that pain was not the problem as much as an inability to achieve full shoulder rotation. (*Id.* at 98.) Claimant testified that when she tries to lift a gallon of milk with her left arm, "it stops and won't go up any farther." (*Id.*) However, as the ALJ noted, and as discussed above, Claimant had no difficulty moving her arms at her most recent doctor appointments. (*Id.* at 732, 734.) Dr. Daly and Dr. May, who reviewed Claimant's records for the state agency, concluded, in relevant part, that Claimant could "occasionally reach overhead, in front, and/or laterally with her left upper extremity." (*Id.* at 130-32, 146-48.) Drs. Daly and May did not mention sweeping, mopping or shoveling, or working with outstretched arms, other than to limit pushing to 20 pounds occasionally and 10 pounds frequently. (*Id.*)

I find that Dr. Luke's opinion is not supported by substantial evidence in the record as a whole, especially the most recent evidence, wherein Claimant told Dr. Harter that she was not experiencing any pain or health concerns. Moreover, Dr. Luke's objective physical examinations did not disclose any concerns or abnormalities with how Claimant's shoulder functioned. Accordingly, Dr. Luke's opinion would likely have been entitled to little or no weight had the ALJ considered the opinion. *See Guetti v. Colvin*, No. 12-CV-3004 MJD/SER, 2014 WL 538583, at *18 (D. Minn. Feb. 11, 2014), *aff'd*, 580 F. App'x 503 (8th Cir. 2014) (holding that ALJ's failure to mention and then discount certain medical opinions was harmless error because, in part, evidence in the record "militat[ed] in favor of providing the medical opinions with no to little

weight in the ALJ's determination") (citing *McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011)).[8]

### c.    Conclusion

Dr. Luke's opinion is conclusory and is neither supported by his own examination notes nor by Ms. Kuyava's treatment notes—the notes Dr. Luke was presumably going to rely upon to render his opinion.   Moreover, because Dr. Luke's opinion is not supported by substantial evidence on the record as a whole, I find that even if the ALJ had considered the opinion, it would likely not have changed the ALJ's decision, and therefore, failure to mention Dr. Luke's opinion was harmless error and the case need not be remanded on this basis.

### E.    *The manner in which the ALJ weighed other medical evidence did not affect how she weighed Dr. Neiman's opinion.*

Claimant argues that the ALJ's incorrect weighing of Dr. Luke's and Dr. Abernathy's opinions led to an incorrect weighing of Dr. Neiman's opinion.   Specifically, Claimant asserts that

> the ALJ erroneously found Dr. Neiman's opinions had to be "entirely supported by the medical evidence of the record" to be afford weight and further discounted Dr. Neiman's opinions due to being examining opinions provided in the context of the worker's compensation claim. . . . Had the ALJ recognized Dr. Luke's opinions in the record, and recognized Dr.

---

[8] The other 20 C.F.R. Section 404.1527(c) factors are neutral.   Dr. Luke is an occupational medicine specialist and  more weight is generally given "to the medical opinion of a specialist about medical issues related to his or her area of specialty." *Id.* § 404.1527(c)(5).   Moreover, more weight is generally given "to the medical opinion of a source who has examined [a claimant] than to the medical opinion of a medical source who has not examined [a claimant]." *Id.* § 404.1527(c)(1).   However, Dr. Luke only examined Claimant once, which was not long enough to develop the kind of treatment relationship wherein Dr. Luke "obtained a longitudinal picture of [Claimant's] impairment." *Id.* § 404.1527 (c)(2)(i).

Abernathy did not provide any opinion *perhaps* the ALJ would have properly evaluated the opinions of Dr. Neiman.

(Doc. 16 at 5) (emphasis added.)

First, I find Claimant's argument that the weight the ALJ gave to the opinions of other health care professionals somehow limited the weight the ALJ gave Dr. Neiman's opinion to be without merit. There is not a finite amount of weight that an ALJ must distribute among the various medical opinions in any particular case such that assigning great weight to one opinion takes away the amount of weight available to assign to the other opinions. Rather, it is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians and assign the weight the ALJ deems appropriate. *See Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001); *Martin v. Berryhill*, No. 1:18-CV-00004 JM/PSH, 2019 WL 138655, at *6 (E.D. Ark. Jan. 8, 2019) (holding that "the ALJ must weigh the various medical opinions in the record") (citing *Wagner v. Astrue*, 499 F.3d 842 (8th Cir. 2007)), *R. & R. adopted*, 2019 WL 334202 (E.D. Ark. Jan. 25, 2019); *Shuttleworth v. Berryhill,* No. 17-CV-34-LRR, 2017 WL 5483174, at *7 (N.D. Iowa Nov. 15, 2017) ("Where an ALJ does not rely on opinions from treating or examining sources, there must be *some other medical evidence* in the record for the ALJ's opinion to be supported by substantial medical evidence on the record.") (quoting *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004)) (emphasis added), *R. & R. adopted*, 2018 WL 1660084 (N.D. Iowa Apr. 5, 2018).

Next, Claimant makes much of the following sentence in the ALJ's decision: "Dr. Neiman's opinion is given some consideration; however it is not entirely supported by the medical evidence of record." (AR at 17.) Claimant seems to be asserting that the ALJ was inappropriately holding Dr. Neiman's opinion to a higher standard; i.e., that his opinion had to be supported by the "entire record." I do not agree. Claimant seems to be arguing that the ALJ did not give Dr. Neiman's opinion any weight when, in fact,

she gave it "some weight." The District of Nebraska analyzed the same language in an ALJ's decision and reasoned that "the phrase 'some consideration' [is not] meaningless, as [the claimant] argues. It tells the Court that the ALJ gave [the doctor's] opinion something less than controlling weight, and that these opinions were consistent with some, but not all, of the evidence of record." *Fickler v. Colvin*, No. 8:11CV440, 2013 WL 1090405, at *20 (D. Neb. Mar. 15, 2013). Thus, the court held that the ALJ did not fail to explain the weight he gave the doctor's opinions. *Id.*

I agree with the reasoning of *Fickler* and find that the ALJ in this case did not fail to assign any weight to Dr. Neiman's opinion. Moreover, I also find that when the ALJ stated that Dr. Neiman's opinion was "not entirely supported by the medical evidence in the record," she was not holding Dr. Neiman's opinion to a higher standard than the law allows. Rather, the ALJ was merely stating that Dr. Neiman's opinion is not entirely supported by medical evidence on the record as a whole. "An arguable deficiency in opinion-writing technique does not require [the court] to set aside an administrative finding when that deficiency had no bearing on the outcome." *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011). As discussed above, because the record as a whole does not support Dr. Luke's and Dr. Neiman's opinions, this deficiency had no bearing on the outcome of the case.

Finally, Claimant argues that if the ALJ had weighed the medical evidence differently, giving Dr. Luke's and Dr. Neiman's opinions greater weight, then the ALJ would have adopted a different RFC, which would have changed the ALJ's conclusion at step 4 of the five-step process. At step 4, the ALJ found that Claimant could perform her past relevant work as a retail store manager. (AR at 27.) Claimant argues that one of the tasks of a store manager is to perform the duties of subordinates, which includes the duties of sweeping, mopping, and shoveling. (Doc. 16 at 5-6.) Because an RFC based on limitations proposed by Dr. Luke and Dr. Neiman would prohibit sweeping,

mopping, and shoveling, Claimant avers that failure to give Dr. Luke's and Dr. Neiman's opinions greater weight was reversible error.

I find that even if the ALJ should have concluded that Claimant could not perform her past work as a store manager, finding that she could perform this work at step 4 was harmless error. This case at bar is procedurally similar to *York v. Colvin*, No. 2:15 CV43 PLC, 2017 WL 35698 (E.D. Mo. Jan. 4, 2017). In *York*, the ALJ concluded at step 4 that the claimant was capable of performing her past relevant work, but still went on to step 5 and concluded that other jobs existed in the national economy that the claimant could also perform. *Id.* at *4. The claimant argued that substantial evidence did not support the ALJ's finding that she had performed past relevant work at "the substantial gainful activity level." *Id.* at *3. The court held that it was unnecessary to determine whether the claimant's past work constituted "past relevant work" under SSA regulations because any error in how the ALJ calculated these jobs was harmless given that the ALJ found at step 5 the claimant was capable of performing other jobs in the national economy. *Id.* at *4. Therefore, the court held that the ALJ properly found that the claimant was not disabled. *Id.*

Just as the *York* court found any possible error related to the ALJ's determination of past relevant work harmless because the ALJ made alternative findings at step 5, I find that any possible error the ALJ made in this case at step 4 was harmless because she made alternative findings at step 5. Claimant takes issue with the possibility of having to sweep, mop, and shovel. None of the positions the ALJ listed at step 5 involve those tasks and Claimant does not argue that they do. *See* United States Dept. of Labor Office of Admin., Law Js. L. Libr., *Dictionary of Occupational Titles* (4th ed., rev. 1991), https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03A.HTM (typical duties associated with each job title listed) (last visited April 9, 2019). Accordingly, I find that remand is not necessary based on this argument.

### F.    The RFC is based on medical evidence in the record.

The ALJ adopted the limitations posited by the state agency physicians as her RFC. The ALJ did not state what weight she gave to the state agency physicians' opinions. It seems to have been more than the "some weight" she gave to Dr. Neiman's opinion because the ALJ did not adopt Dr. Neiman's limitations as her RFC. An RFC must be supported by some medical evidence in the record, but need not be supported by the opinion of treating or examining sources. *Shuttleworth*, 2017 WL 5483174, at *7 ("Where an ALJ does not rely on opinions from treating or examining sources, there must be *some other medical evidence* in the record for the ALJ's opinion to be supported by substantial medical evidence on the record.") (quoting *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004)) (emphasis added). In this case, the ALJ weighed the evidence and gave great weight to "the opinion" of Dr. Abernathy, but did not adopt Dr. Abernathy's limitations as her RFC. In addition, the state agency physicians did not adopt Dr. Abernathy's limitations as their RFC and only mentioned Dr. Abernathy once in their reports when they said that he told Claimant that surgery would not alleviate all her problems. (AR at 132.) Thus, I find that the state agency physicians' opinions are not based in whole or in part on what I concluded was Dr. Abernathy's non-existent opinion. *See supra* Part III.C. Therefore, I find that the case need not be remanded for the reviewing physicians to re-evaluate the record without considering Ms. Kuyava's FCE as Dr. Abernathy's opinion because the reviewing physicians never gave Ms. Kuyava's FCE improper weight as a treating physician opinion. Accordingly, the opinions left in the record are the opinions of Dr. Neiman and the state agency physicians. In addition, the record contains Ms. Kuyava's FCE, which can be considered when evaluating how Claimant's impairments affect her ability to function. *Cronkhite*, 935 F.2d at 134.

As discussed above, Dr. Neiman saw Claimant once so he could write an FCE for Claimant. Thus, Dr. Neiman is not a treating source, but is an acceptable medical source. *See* 20 C.F.R. § 404.1527 ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source."). In general, the opinion of an acceptable medical source who has examined a claimant is entitled to more weight than the opinion of a source who has not examined a claimant. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *Shontos,* 328 F.3d. at 425. However, Dr. Neiman's opinion can be discounted in favor of the opinions of state agency physicians who did not examine Claimant if the state agency physicians' opinions are "more consistent with the medical evidence." *See Vance v. Berryhill*, 860 F.3d 1114, 1120-21 (8th Cir. 2017) (discussing treating source opinions).

I have already concluded that Dr. Neiman's opinion is not entirely supported by substantial evidence in the record as a whole. *See supra* Part III.E. I will now evaluate the state agency physicians' opinions.

A proper evaluation of a physician's opinion requires consideration of the following factors: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors.[9] 20 C.F.R. §§ 404.1527(c)(1)-(5), 416.927(c). "[T]he regulations do not strictly require the ALJ to explicitly discuss each factor under 20 C.F.R. § 404.1527(c)." *Kuikka v. Berryhill*, No.

---

[9] "Other factors" can include information claimants or others bring to the Social Security Administration's ("SSA") attention, or of which it is aware, which tend to support or contradict a medical opinion. "For example, the amount of understanding of [SSA] disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, and the extent to which a medical source is familiar with the other information in [a claimant's] case record are relevant factors that [SSA] will consider in deciding the weight to give to a medical opinion." 20 C.F.R. § 404.1527(c)(6).

17-CV-374 (HB), 2018 WL 1342482, at *5 (D. Minn. Mar. 15, 2018) (quoting *Mapson v. Colvin*, No. 14–CV–1257 (SRN/BRT), 2015 WL 5313498, at *4 (D. Minn. Sept. 11, 2015) (noting internal brackets omitted)).

### i.    *Examining Relationship*

"Generally, [ALJs] give more weight to the medical opinion of a source who has examined [a claimant] than to the medical opinion of a medical source who has not examined [a claimant]." 20 C.F.R. § 404.1527(c)(1). However, a treating source's opinion may be disregarded in favor of other opinions if it is not supported by substantial evidence in the record. *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007). Chrystalla Daly, D.O. and John May, M.D. reviewed the record for the state agency. Neither physician ever examined Claimant. This factor weighs against giving their opinions much weight.

### ii.    *Treatment Relationship*

"Generally, [ALJs] give more weight to the medical opinions from [a claimant's] treating sources. . . . When the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment, [the ALJ] will give the source's opinion more weight than . . . if it were from a nontreating source." 20 C.F.R. at § 404.1527(c)(2)(i). In addition, "the more knowledge a treating source has about [a claimant's] impairment(s), the more weight the [ALJ] will give the source's opinion." *Id.* at § 404.1527(c)(2)(ii). Neither examining physician ever saw Claimant, and there is no indication in the record of their specialties. Thus, this factor weighs against giving the opinions much weight.

### iii.    *Supportability*

"The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). A reviewing physician will not have his or her own treatment notes to evaluate for this

factor, but the reviewers in this case provided not only the standard fill-in-the-blanks/short answer form for reviewer opinions, but also extensive explanatory notes, some of which highlight the physicians' concerns that Claimant's subjective complaints are not supported by objective medical findings. (AR at 129-32 (referring to AR at 470-71, 583).) In addition, the reviewers actually assigned Claimant more restrictive lifting restrictions than Dr. Neiman did. (*Id.* at 130-31.) Although, in general, "[t]he checklist format, generality, and incompleteness of the assessments limit the assessments' evidentiary value," *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (quotation omitted), in this case, the explanations provided by the reviewing physicians make the opinions more valuable, in spite of their format. I find that this factor weighs in favor of giving the opinions more weight.

### iv. *Consistency*

"Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). I find that the reviewing physicians' opinions are consistent with the record as a whole. The examining physicians concluded Claimant had the following limitations:

- lift and carry 20 pounds occasionally and 10 pounds frequently
- stand and/or walk for six hours in an eight-hour workday
- sit for six hours in an eight-hour workday
- push and pull within the above weight restrictions and perform frequent operation of hand controls and unlimited operation of foot controls
- frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds
- frequently balance and stoop
- occasionally kneel, crouch, and crawl
- occasionally lift overhead with her left upper extremity
- occasionally reach in front or laterally with her left upper extremity

(AR at 130-32.) As discussed above, Claimant did not disclose any health concerns or problems at her most recent doctor appointments with Dr. Harter, which was one of the reasons the more restrictive limits Dr. Neiman and Dr. Luke proposed were inconsistent with the record as a whole. (*Id.* at 732-33.) Although limiting Claimant to lifting 20 pounds occasionally and 10 pounds frequently is more restrictive than any of the other opinions in the record, the reviewers' explanation indicates that even though they somewhat doubted Claimant's credibility, they seemed to credit her statement that her shoulder pain is worse when she lifts over 10 pounds. (*Id.* at 132 (citing Claimant's second pain questionnaire).) As independent reviewers, Drs. Daly and May had the right to do this, and their explanations provide proper foundations for their conclusions. In addition, neither Claimant nor her health care providers limited Claimant's abilities to kneel, crouch, crawl, balance, stoop, or climb stairs. Therefore, lack of restrictions on those activities is supported by the record. In addition, no one argues that Claimant should climb ladders, ropes, or scaffolds, so inclusion of those prohibitions is supported by the record. Finally, as previously discussed, the limits on sweeping, mopping, and shoveling that Dr. Luke put on Claimant are not supported by any objective tests or even any narrative explanation, and the reviewing physicians had a right to ignore those limits. I find that the reviewers' limitations, and therefore the ALJ's RFC, is supported by substantial evidence in the record as a whole. Even though the evidence might have supported the opposite conclusion on certain items, the court cannot reverse on that basis, alone. *See Moore*, 572 F.3d at 522. This factor weighs in favor of giving the opinions more weight.

### v. Specialization

"[The ALJ will] generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). The record does not

indicate that Dr. Daly or Dr. May is a specialist in orthopedics, joint disease, or disc disease. Thus, this factor weighs against giving the opinions much weight.

### vi. Conclusion

After a thorough review of the entire record, I find that the reviewing physicians' opinions are supported by substantial evidence in the record as a whole, and therefore, should not be disturbed. Accordingly, these opinions should remain as the RFC in this case, and the case need not be remanded on this basis.

### G. Claimant failed to timely raise her Appointments Clause argument under *Lucia v. SEC.*

In *Lucia v. SEC*, the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" within the meaning of the Appointments Clause, and, therefore, the President, a court of law, or department head must appoint them. 138 S. Ct. at 2049. Claimant argues that Social Security Administration ALJs should be treated as improperly appointed "inferior officers" like the SEC ALJs in *Lucia*. Claimant asserts this Court should vacate the denial of benefits by ALJ Mein and remand the case for decision by what he contends is a properly-appointed ALJ. Claimant admits that she is asserting her Appointments Clause challenge for the first time in her opening brief to this Court.

Claimant does not argue that her case presents any factual or procedural differences from other cases that have previously been addressed by this Court. Indeed, this case has the same procedural posture as several other cases wherein this Court already addressed this issue (i.e., all administrative proceedings, including denial by the appeals council, were completed before *Lucia* was decided on June 21, 2018). However, Claimant cites a recent case from the Middle District of Pennsylvania in which the court remanded the claimant's case to be heard by a constitutionally-appointed ALJ. *See Bizarre v. Berryhill*, —F. Supp. 3d.—, No. 1:18-CV-48, 2019 WL 1014194, at **6-7

(M.D. Penn. Mar. 4, 2019) (remanding case for rehearing before a constitutionally-appointed ALJ because raising the issue during the administrative process would have been futile and because no SSA statute or rule requires constitutional issues to be raised during the administrative process at the risk of forfeiture).

This Court has ruled in favor of the Commissioner on similar claims on five occasions. *See White v. Comm'r of Soc. Sec.*, No. C18-2005-LTS, 2019 WL 1239852, at *4 (N.D. Iowa Mar. 18, 2019); *Stearns v. Berryhill*, No. 17-CV-2031-LTS, 2018 WL 4380984, at *6 (N.D. Iowa Sept.14, 2018); *Davis v. Comm'r of Soc. Sec.*, No. 17-CV-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018); *Iwan v. Comm'r of Soc. Sec.*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018); *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa Sept. 10, 2018).

In *Stearns*, this Court ruled as follows:

The United States District Court for the Central District of California has considered *Lucia* in the Social Security context, holding that claimants have forfeited the Appointments Clause issue by failing to raise it during administrative proceedings. *See Trejo v. Berryhill*, Case. No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018). I find this holding to be consistent with [relevant precedent]. Stearns' argument that an issue need not be raised if the ALJ does not have authority to decide it does not hold water under *Lucia*. *Lucia* made it clear that, with regard to Appointments Clause challenges, only "one who makes a timely challenge" is entitled to relief. *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder*, 515 U.S. at 182-83).

In *Lucia*, the Supreme Court acknowledged the challenge was timely because it was made before the Commission. *Id.* In the context of Social Security disability proceedings, that means the claimant must raise the issue before the ALJ's decision becomes final. . . . *Lucia* makes it clear that this particular issue must be raised at the administrative level.

> Because Stearns did not raise an Appointments Clause issue before or
> during the ALJ's hearing, or at any time before the ALJ's decision became
> final, I find that she has forfeited the issue for consideration on judicial
> review. As such, her request for remand on this basis is denied.

2018 WL 4380984, at **5–6 (paragraph break added).

As previously stated, Claimant does not claim that her case presents any factual
or procedural differences from the cases cited above. In addition, I do not find the
reasoning of *Bizarre* persuasive because the Eighth Circuit has held that a party forfeits
an Appointments Clause claim by failing to raise it to the agency. *See Kimberly B. v.
Berryhill*, No. 17-CV-5211 (HB), 2019 WL 652418, at *14 (D. Minn. Feb. 15, 2019)
(citing *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013)).
Although Claimant argues that raising the issue during the administrative process would
have been futile because Social Security EM-1003[10] prevented the ALJ from addressing
the issue, nothing stopped Claimant from raising the issue during the administrative
prosses and preserving it for appeal. In addition, Claimant's argument that Acting
Commissioner Berryhill's authority lapsed between November 2017 and April 2018,
leaving no one at the SSA with the "power to correct the Appointments Clause issue
during much of the time [her] claim was pending with the Appeals Council" (Doc. 16 at
11-12, n.11), is unavailing for the same reason. Nothing prevented Claimant from raising
this issue in her appeal to the Appeals Council and preserving it for appeal to this Court.[11]

---

[10] EM-1003 was issued on January 30, 2018, and stated, "Because the SSA lacks the authority
to finally decide constitutional issues such as these, ALJs will not discuss or make any findings
related to the Appointments Clause issue on the record." It did not prevent claimants from
making such challenges and, by its very existence, anticipated that claimants would make them.
[11] Because Acting Commissioner Berryhill's authority was reinstated one month before the
Appeals Council rendered its decision in this case, under Claimant's theory, someone at the SSA
actually did have the "power to correct the Appointments Clause issue" while her claim was
pending with the Appeals Council.

Accordingly, I recommend that Claimant's request for remand on this basis should be denied.

## IV.  CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm the decision of the ALJ** and **dismiss Plaintiff's case with prejudice**.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 1st day of May, 2019.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa